## Hart *et al. versus* The Borough of Girard.

1. Hart procured volunteers and had them credited to a borough; he afterwards transferred them to another district; if he acted as agent of the borough in procuring the men, he did a wrong in transferring, and an action on the case would lie against him.

2. When one without authority acts for another, that other may ratify the act and avail himself of its benefits, assuming its attendant burdens.

3. Before ratification the agent may retract; he need not wait an indefinite time to see whether he for whom he so acted will adopt his act.

October 21st 1867.    Before THOMPSON, STRONG, READ and AGNEW, JJ.    WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Erie county*, No. 21, to October and November Terms 1867.

This was an action on the case, brought by The Burgess and Town Council of the Borough of Girard against Leffert Hart and L. S. Wright. The writ issued September 31st 1865.

In 1864 Hart, one of the defendants, was burgess of the borough of Girard, Wright the other defendant, Thomas McClure, James Webster and Henry Ball were councilmen.

There was evidence that shortly after the call by the President for 300,000 men in the summer of 1864, the council was called together in reference to filling the quota; " that they agreed to fill the call, and that all the burgesses and council were to act as agents in filling that call."

On the 20th of July 1864, James Webster and Asa Battles were appointed by the council recruiting agents to go South and procure volunteers to fill the quota of the borough.

On August 13th 1864, before the agents who had gone South had been heard from, Hart and Wright secured seven men in the neighborhood, at $300 each, paid for them, and had them credited to the borough. On the 6th of September information was received from Webster and Battles that they had secured enough men for the borough. The men who had been procured by the defendants were transferred to Girard township, and the defendants received $500 for each of them. The borough of Girard brought this suit to recover $1400, the difference between the amount paid by the defendants and that which they received. There was other evidence on the question of the defendants acting as agents of the borough in procuring these recruits.

[Hart *v.* Borough of Girard.]

The defendants submitted the following points :—

1. If the jury find from the evidence that the seven men named in the plaintiff's *narr.* were obtained by the defendants to provide against the contingency of Webster and Battles failing to fill the quota of Girard ; that the defendants paid their own money ; that the borough authorities never authorized the defendants to recruit these men, had never paid or offered to pay them the money they expended, and that the quota of Girard was filled by Webster and Battles, then the plaintiffs are not entitled to recover.

2. That if the jury find that Hart and Wright, in putting in. these seven men, and paying them with their own money, acted without authority from the borough, then the defendants could not have recovered from the borough the money paid, and expenses they had been at, and if they could not, then the plaintiffs cannot recover in this case.

The court (Johnson, P. J.), after recapitulating the evidence, charged :—

" To whom then does the money received for these seven men —or for the transfer of their credit from the borough to the township of Girard—belong, over and above what was necessary to pay the men ?

" It is true, as claimed, that agents are bound to act with scrupulous fidelity towards their principals in matters within the scope of their agency.

" Not only technical accuracy but good faith should be observed in all matters committed to their charge, affecting the interests of the principal.

" [The burgess and town council of a borough are ex-officio agents of the corporation. It acts only by and through them. Its interests are committed to their charge. They may act in person or as a body corporate, or may appoint sub-agents in the transaction of business relating to the borough. They may agree that each may act for and represent the whole in any particular transaction.] The burgess or a councilman may, singly, as such, do many things on behalf of, and what may bind the borough.***

" It is not disputed that the law authorized the borough to hire men to fill the draft, and assess a tax to pay them.

" Had it undertaken to supply the quota for that draft, and had the burgess and councilmen agreed each to do all they could to accomplish that purpose ?

" There is no conflict of evidence on that point. If so, did the defendants, in pursuance of that resolution, and by virtue of their official relation to the borough, engage these seven men to enlist for it, or to its credit, and have them put in and credited accordingly ? If so, it was all right and proper, exhibiting a commendable fidelity to the interests of their constituents.

[Hart *v.* Borough of Girard.]

" [The borough had authorized it and had the advantage or supposed advantage of it, and was undoubtedly responsible for the expenses incurred.

" The defendants then being agents of the borough, to do this thing, and having in its name and on its behalf engaged these men, and entered them on the books to the credit of the borough, they belonged to the borough, so far as the right of property could attach to them. They were hired for and delivered to the borough, at its request, and to supply its pressing wants.]

" [Was there ever any disavowal of their act, or refusal on the part of the borough to acquiesce in and carry out the arrangement?

" If not, then only the borough could dispose of or transfer these men elsewhere. The defendants could only do so as officers or agents of the borough. Admitting there existed authority somewhere to dispose of these men and transfer their credit to another district without their consent, it could only be exercised by the party interested and who had the credits. This power could therefore be exercised by the defendants, because they were ex officio the agents of the borough. Having done so, the bargain would enure to the benefit of the borough.] It is argued * * * 2. That the defendants paid their own money for them, and therefore had the right to sell them and pocket the proceeds. * * *

" As to the second objection, we answer, the fact that an agent has advanced money for his principal, in the business of his agency, gives him no right to claim the ownership of the property secured, or protected by the advancement.

" The advancement may give him a lien on the property of the principal in his hands, and entitle him to reimbursement in preference to other claims. But he acquires no right of property in the goods, and where sold at an advance, the profits belong to the principal.

" Did the defendants advance what money was paid at the time as a loan to the borough, or with the expectation and intention that the borough should repay them?

" If so, the advancement would vest no title to the men or credits in them personally, without the consent or default of the borough.

" If the jury should find the facts to be as stated in the defendants' 1st point, we acquiesce in the conclusion it presents.

" The 2d point is answered in the same way—affirmatively, if the facts are as stated. But we do not so understand the evidence. If the evidence is believed, we do not see why Hart and Wright were not just as much authorized to procure men to fill the quota as Battles and Webster, and why the borough would not be as much bound to recognise the doings of the one as of the other."

The verdict was for the plaintiffs for $1580.33.

The defendants having removed the case to the Supreme Court,

assigned for error the answer of the court below to their 2d point; those parts of the charge enclosed in brackets; that the court took the facts of the agency from the jury; and that the court charged that the plaintiffs could sustain the suit.

*J. H. Walker*, for plaintiffs in error.

*S. E. Woodruff*, for defendants in error, cited Bank of Kentucky *v.* Schuylkill Bank, 1 Pars. R. 251; Claghorn *v.* Cullen, 1 Harris 139; Steamboat Co. *v.* McCutcheon, Id. 13; 1 Hare & Wallace's Am. Lead. Cas. 573; Story on Agency, §§ 211, 335; Kimmell *v.* Greting, 2 Grant 125: Kimmel *v.* Stoner, 6 Harris 157; Act of April 3d, § 3, Purd. 119, pl. 55, Pamph. L. 325; Brightly's Eq. §§ 97, 101; Fisk *v.* Sarber, 6 W. & S. 21; Hilliard on Torts 427; Reeside *v.* Reeside, 13 Wright 322.

The opinion of the court was delivered, October 28th 1867, by STRONG, J.—It was a very material question in this case whether the defendants Hart and Wright were the authorized agents of the borough to enlist the seven men and have them credited on the impending draft. If they were, the borough was responsible for the bounties paid or agreed to be paid, and was entitled to have the men credited on its quota. Then the transfer of the men to the township of Girard was a wrong done to the borough, for which it may obtain redress in this action. But if the defendants were not the authorized agents of the borough, and yet undertook to act as such agents, the borough was not bound by their acts, and certainly was under no obligation to refund the $2100 which they paid as bounties or their other expenses. It is true that when one without authority undertakes to act for another, that other may afterwards ratify the act, and thereby avail himself of its benefits, assuming at the same time its attendant burdens. Prior to such ratification, however, the agent is at liberty to retrace his steps. He is not obliged to wait an indefinite time to see whether the person for whom he has acted without authority will adopt his act. Clearly is this so when in acting he has made expenditures or assumed personal obligations. Such being the law, if the defendants were not authorized by the borough to enlist men and have them placed to the credit of the borough, if they could not therefore have recovered from the borough the money paid by them and the necessary expenses to which they had been subjected in procuring the men, they had a right to protect themselves and obtain reimbursement of their expenditure by causing the men to be credited to the township at any time before the borough ratified their agency, unless, perhaps, the credit to the borough had been actually consummated.

It having been therefore a material question whether the

[Hart *v.* Borough of Girard.]

defendants had authority to engage men to enter the military service and be credited on the quota of the borough, the question should have been submitted to the jury to be answered from the evidence. It was not for the court to answer it or give to the jury instructions how it should be answered. And we are not without our suspicions that the court intended to submit it to the jury. But the language of the learned judge seems rather to have withdrawn it from their consideration.

He was requested to charge, " that if the jury found that Hart and Wright, in putting in their seven men and paying them with their own money, acted without authority from the borough, then the defendants could not have recovered from the borough the money paid and expenses they had been at; and if they could not, then the plaintiffs could not recover in this case." This proposition the judge answered affirmatively, on the supposition that the facts were as stated.

He added, however, these remarks: " But we do not so understand the evidence. If the evidence is believed, we do not see why Hart and Wright were not just as much authorized to procure men to fill the quota as Battles and Webster (who had been expressly empowered by a resolution of the councils), and why the borough would not be as much bound to recognise the doings of the one as the other."

The jury may well have considered this as a binding direction that the authority had been given, especially as in no other words was the question referred to them. Other parts of the charge may well have produced the same impression upon the minds of the jury. The learned judge declared there was no conflict of evidence on the point whether the borough had undertaken to supply the quota for that draft, and whether the burgess and councilmen had agreed each to do all they could for that purpose. He added: " If so (that is if there was no conflict of evidence), did the defendants, in pursuance of that resolution, and by virtue of their official relation to the borough, engage these seven men to enlist for it, or to its credit, and had them put in and credited accordingly? If so, it was all right and proper, exhibiting a commendable fidelity to the interests of their constituents. The borough had authorized it and had the advantage or supposed advantage of it, and was undoubtedly responsible for the expenses incurred."

" The defendants then being agents of the borough to do this thing, and having in its name and on its behalf engaged these men," and entered them on the books to the credit of the borough, they belonged to the borough so far as the right of property could attach to them.

" They were hired for and delivered to the borough at its request, and to supply its pressing wants."

This certainly looks very much like taking the question of fact away from the jury, and taken in connection with the answer to the defendants' second point, we cannot but think its tendency was to lead them to conclude that the agency of the defendants for the borough was not a question for them.

For this reason, and for this reason alone, the judgment must be reversed.

There is no error in any other part of the record.

Judgment reversed, and a *venire de novo* awarded.